In the
# United States Court of Appeals
## For the Seventh Circuit

No. 24-1086

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

JONATHAN S. ROSE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:23-CR-34-HAB — **Holly A. Brady**, *Chief Judge.*

ARGUED OCTOBER 24, 2024 — DECIDED JULY 2, 2026

Before EASTERBROOK, KIRSCH, and PRYOR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In September 2009 Jonathan Rose was involuntarily committed to a mental hospital in Indiana, suffering from a "psychiatric disorder". The record does not name the disorder or contain a detailed evaluation by a mental-health professional. He was released in January 2010 and has not been recommitted.

In 2022 Rose purchased several guns. He tried and failed to purchase others but was turned down because of his civil commitment. (A mismatch of birthdates in public databases

seems to be responsible for his success on some occasions and failure on others.) In 2023 Rose was indicted for acquiring guns in violation of 18 U.S.C. §922(g)(4), which prohibits anyone "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possessing firearms. He also was indicted under 18 U.S.C. §922(a)(6) for lying to the gun dealers. Rose told each dealer that he had never been committed to a mental institution. *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023), concludes that §922(a)(6) is compatible with the Second Amendment. But the district court concluded that §922(g)(4) is not, as applied to someone who is no longer mentally ill. It dismissed those counts of the indictment, leading to this appeal by the United States.

Other courts of appeals have reached divergent conclusions about the validity of §922(g)(4). See *Tyler v. Hillsdale Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016) (en banc) (invalid except as applied to a currently dangerous person); *Beers v. Attorney General*, 927 F.3d 150 (3d Cir. 2019) (valid), remanded with instructions to dismiss as moot, 590 U.S. 940 (2020); *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020) (valid). All of these decisions predate *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022); *United States v. Rahimi*, 602 U.S. 680 (2024); *United States v. Hemani*, No. 24–1234 (U.S. June 18, 2026); and *Wolford v. Lopez*, No. 24–1046 (U.S. June 25, 2026). Between *Rahimi* and *Hemani* the Fourth Circuit rejected a facial challenge to §922(g)(4) while reserving the possibility of an as-applied challenge. *United States v. Gould*, 163 F.4th 795 (4th Cir. 2026). The issue is open in this circuit.

Relying principally on *Bruen*, the district court observed that the historical record does not show that people who had transient mental problems remained ineligible for life. The judge recognized that *District of Columbia v. Heller*, 554 U.S.

570, 626 (2008), flatly stated that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are presumptively valid. When extending *Heller* to the states, the Court in *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (lead opinion), assured readers that this observation remains true. It was quoted with approval recently in *Wolford*, slip op. 4. But the district judge observed that the Justices' remarks concern people who *are* mentally ill, not people who *used to be* mentally ill. Yet §922(g)(4) applies to anyone who ever was committed to a mental institution. Some people are committed but released after they recover; others are committed in error and released once the mistake is discovered. Neither set of persons is mentally ill today, but §922(g)(4) applies to both categories.

The United States contends that §922(g)(4) is valid even with respect to persons who were never dangerous or who have recovered. That approach is hard to square with *Heller*, *McDonald*, *Bruen*, *Rahimi*, *Hemani*, and *Wolford*. *Rahimi* rejected a challenge to 18 U.S.C. §922(g)(8) by stressing the significance of the defendant's current danger to others and the fact that the finding of danger had a time limit. And *Hemani* holds §922(g)(3) invalid as applied to a casual drug user who has not been shown to be currently dangerous (or addicted in a way that implies inability to control one's actions).

The prosecutor cites historical examples of laws disarming lunatics and other mentally unstable persons but no examples of laws in the seventeenth, eighteenth, or nineteenth centuries disarming *for life* people whose mental problems were transitory. *Hemani* discussed several of the civil-commitment statutes from the 1700s and 1800s and deemed those examples not pertinent to a person who is not demonstrably dangerous. Every relevant historical practice disarmed a mentally ill person only during civil commitment or ongoing insanity.

The absence of historical support for rules that operate like §922(g)(4) does not imply that it is invalid "on its face." Outside the realm of the First Amendment, a statute survives a facial challenge if any application would be valid. *Rahimi*, 602 U.S. at 693; *United States v. Salerno*, 481 U.S. 739, 745 (1987). And §922(g)(4) has many constitutionally valid applications. Here's an easy one: someone who remains in civil detention following acquittal on a murder charge after the jury determined that he is insane and continues to be dangerous.

*Rahimi* explains at length that someone who is now dangerous (or has recently been adjudicated dangerous) may be disarmed. The Court gave several historical analogs, which we need not repeat. It wrapped up: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." 602 U.S. at 700. But the Court's use of the present tense—in this language and throughout *Rahimi*—shows that §922(g)(4) is problematic as applied to someone who is now mentally healthy, seems likely to stay mentally healthy, and therefore does not "present a credible threat to the physical safety of others." *Rahimi* also leaves open the question whether danger must be established by a recent adjudication—and, if so, how long ago counts as "recent." (Rahimi possessed a gun less than a year after a court issued an order finding him dangerous and forbidding firearms possession.)

*Hemani* reinforces the message of *Rahimi*. The Court observed that many users of illegal drugs (the drug in *Hemani* was marijuana) are able to control their behavior and are not dangerous, even when using drugs. The Court held §922(g)(3) invalid as applied to such persons, while reserving questions about the treatment of addicts who cannot control their conduct or who have misused firearms while under the influence.

As the prosecutor sees things, a civil commitment creates at least a presumption of ongoing danger, even if the adjudication occurred more than a decade ago. That argument might carry force if the presumption were defeasible, so that evidence of current mental health put the prosecution to its proof. But §922(g)(4) asks about former mental conditions, not current ones.

Like 32 other states, Indiana allows its courts to lift firearms disabilities of someone who is no longer in a mental institution—and, if a state court does this, federal firearms disabilities also are lifted. 34 U.S.C. §40915(a)(2). Indiana's system appears in Ind. Code §§ 33-23-15-1 to 33-23-15-3. The problem with Indiana's approach, from an applicant's perspective, is that the system is discretionary:

> (b) In determining whether the person is prohibited from possessing a firearm because the person is not a proper person under IC 35-47-1-7(11) through IC 35-47-1-7(13), the court or department of correction shall consider the following evidence:
>
> > (1) The facts and circumstances leading to the person being included in the category of persons to whom this chapter applies.
> >
> > (2) The person's mental health and criminal history records.
> >
> > (3) Evidence concerning the person's reputation, including the testimony of character witnesses.
> >
> > (4) A recent mental health evaluation by a psychiatrist or psychologist licensed to practice in Indiana.
>
> (c) If the court or the department of correction, after considering the evidence described in subsection (b), finds by clear and convincing evidence that:
>
> > (1) the person is not a danger to the person or to others;
> >
> > (2) the person is not likely to act in a manner dangerous to public safety; and

(3) the requested relief would not be contrary to public interest;

the court or department of correction shall transmit its findings to the office of judicial administration, and any other information required by the office of judicial administration, for transmission to the NICS in accordance with IC 33-24-6-3.

Ind. Code §33-23-15-2. This requires the applicant to show harmlessness by "clear and convincing evidence" and, even then, does not entitle the applicant to relief. If the court determines that the "public interest" justifies disarmament, it may deny the application even if a person satisfies the criteria relating to danger.

Note the limits of what we are saying. We do not conclude that Ind. Code §§ 33-23-15-1 to 33-23-15-3 is invalid. States have ample leeway to craft systems for the relief of firearms disabilities. What we do conclude, however, is that Indiana's system does not limit the scope of §922(g)(4) to persons who have ongoing mental illness. We must assess Rose's as-applied challenge on the assumption that in Indiana many persons fully recovered from their mental problems remain unable to possess firearms because they lack clear and convincing evidence of current harmlessness or because a state judge believes that the "public interest" favors disarming people who have recovered from mental illness. *Wolford*, slip op. 17–18, tells us that local sensibilities and divergent beliefs about where the public interest lies do not justify disarming ordinary citizens.

Our conclusion that §922(g)(4) cannot apply in all situations (again consider the predicament of someone committed in error or whose condition was transitory) does not necessarily help Rose, however. He was committed as dangerous in 2009 and, for all we know, remains dangerous today. After his release, he applied for Social Security disability benefits on

account of his mental problems. That application was granted. Federal law requires a recipient of disability benefits to tell the Social Security Administration as soon as a qualifying condition changes. 20 C.F.R. §416.708. Rose has not told the Administration about any mental improvement, so we must assume that he is still afflicted by whatever mental condition led to the award of benefits.

But what is that condition? Why was Rose committed in 2009? Is his mental state in 2009 the sort of condition from which people recover (either naturally or with the assistance of drugs)? The record is silent on these topics. Indeed, the record is silent about almost all subjects that matter to the question whether Rose is mentally ill and dangerous today.

The district court did not hold an evidentiary hearing. Instead the court assumed that Rose is mentally healthy because the indictment and other charging papers do not assert otherwise. Yet why would such information be in an indictment or other charging papers? Indictments need not anticipate constitutional defenses. Someone who wants to contest the validity of a federal statute has at least the burden of raising factual issues and bears the burden of production, if not the risk of non-persuasion. See, e.g., *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 319–20 (1985) (statutes are presumptively constitutional); *Louisville v. Babb*, 75 F.2d 162, 165 (7th Cir. 1935) (person contesting a statute's constitutionality bears the burden of proof). Rose, though, did not produce any evidence—yet *Hemani* shows that it may be essential to evaluate current dangerousness case by case to resolve an as-applied challenge. That approach is as applicable to §922(g)(4) as it was to §922(g)(3) in *Hemani*.

Here's a recap of what we do not know:

1. Why was Rose committed in 2009? Ind. Code §12-26-6-8(a) permits the involuntary commitment of someone who is dangerous *or* gravely disabled. Which of these applied to Rose? The state-court record has a judicial order of commitment with some boxes checked but no narrative analysis. According to the checked boxes, Rose was committed as dangerous to himself and as gravely disabled. His commitment was extended to allow "psychiatric stabilization". A physician told the court (through another checked box) that Rose had "a psychiatric disorder" but did not name the disorder or describe the risks that he might pose to himself or others. The papers from 2009 contain a few comments by physicians. Example: "Patient remains depressed with poor stress tolerance and judgement." These comments do not attempt to assess the degree of danger that Rose poses to others when not confined. Rose told a pretrial services worker in this federal prosecution that he had been diagnosed with bipolar disorder, anxiety, depression, and schizophrenia, but we lack medical documentation in either the state or the federal record. Rose may or may not have understood or correctly described the diagnoses made in 2009.

2. Does the medical profession consider Rose's conditions in fall 2009 to be lifelong, long term, or short term? Is the condition, whatever it was, treatable? Was it treated? Was the treatment (if any) successful?

3. Why was Rose released in January 2010? Medical improvement? A time limit under state law? Some other reason? We know that the hospital did not ask the court to authorize a long-term commitment under Ind. Code §12-26-6-10(h), but the record does not show why.

4. Has Rose seen a psychiatrist or other mental-health professional recently? The answer should be yes, because obtaining a mental-health evaluation and following all of its recommendations is a condition of his pretrial release. But we cannot find in the record the results of that evaluation, which means that Rose's current mental condition is uncertain. (As we mentioned earlier, the district judge did not take evidence or make findings on the subject.)

5. If Rose's mental health depends on drugs, is he taking them? Rose was prescribed an antidepressant in 2009, but the state-court record does not show what effect the prescribing physician expected. (It does show, though, that Rose did not take the medication reliably while he was confined.)

6. What did Rose tell the Social Security Administration when applying for disability benefits? An award of benefits depends on being unemployable, which in principle differs from being dangerous. But danger to fellow workers makes a person unemployable, so the reason that Rose gave matters. He cannot tell the Social Security Administration that he is dangerous to others as a result of a mental problem while telling a court that he is not dangerous. Cf. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999).

7. When awarding disability benefits to Rose, what findings did the Social Security Administration make about his mental condition?

Let us return to *Rahimi*'s fundamental conclusion: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." 602 U.S. at 700. We cannot tell on this record whether Rose presented such a threat in 2009 when he was committed, in 2010 when he was released, in 2022 when he purchased firearms, or today. Rose bears at least the burden

of production on these topics, after which the prosecutor may supply "individualized proof" (*Hemani*, slip op. 18) of current danger.

Criminal Rule 12(b), Fed. R. Crim. P. 12(b), authorizes district judges to decide pretrial motions to address matters that can be resolved without a trial of the merits. Judges hold hearings, and make factual findings, all the time when necessary to resolve motions. Think of the routine hearings and findings in the wake of a defendant's motion to suppress evidence said to have been obtained in violation of the Constitution. A district judge has equal authority to take evidence, and make findings that do not resolve factual matters relating to the defendant's guilt or innocence, when the defendant asserts that the criminal law itself is unconstitutional as applied to him.

The district court's order dismissing the §922(g)(4) charges is vacated. The judge has discretion on remand to give Rose and the prosecutor a chance to present evidence addressing our seven questions, now that *Rahimi* and *Hemani* have clarified the appropriate analysis.

VACATED AND REMANDED